Joshua E. Matic (SBN 259070)
20651 Golden Springs Dr., #817
Walnut, CA 91789
Tel. (646) 389-4384
Fax. (310) 388-3047
joshuae@maticesq.com
*Attorney For Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MODERN FLOOR SPECIALISTS, INC., a California corporation, CLEAN SOLUTION EXPERTS, INC., a California corporation, JOSEPH BRANCH, an individual; ERICA PEREZ, an individual, MARTHA ARCINIEGA, an individual; and ALICIO MENDOZA GALENO, an individual <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES; HEIDI SOTO, in her Official and Individual capacities, and JOHN AND JANE DOES 1-10 <br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES AND** <br><br> **INJUNCTIVE RELIEF** <br><br> **(1) Violation of 42 U.S.C. § 1983 – Fifth Amendment** <br> **(2) Violation of Right to Privacy – California Constitution, Article I, § 1 and Fourteenth Amendment** <br> **(3) Violation of Equal Protection – Fourteenth Amendment, 42 U.S.C. § 1983** <br> **(4) Intentional Infliction of Emotional Distress** <br> **(5) Retaliation – 42 U.S.C. § 1983; Cal. Labor Code §§ 98.6, 1102.5** <br> **(6) Monell Liability – 42 U.S.C. § 1983** <br> **(7) Violation of the Bane Act – Cal. Civ. Code § 52.1** <br> **(8) Violation of the Unruh Civil Rights Act – Cal. Civ. Code § 51** <br> **(9) Abuse of Process** |

## I. INTRODUCTION

1.  This civil rights action is brought by a small business and its operators in response to a discriminatory and retaliatory enforcement scheme orchestrated by the City of Los Angeles and City Attorney Heidi Soto. Defendants engaged in public accusations of criminal conduct, unwarranted demands for personal financial data, and procedural abuses motivated by racial, disability-related, and retaliatory bias.

2.  Defendants exploited civil enforcement tools to intimidate, harass, and pressure Plaintiffs into compliance with subpoenas, despite explicit promises of non-litigation. Acting under color of state law, Defendants deprived Plaintiffs of rights guaranteed by the U.S. Constitution and California law.

3.  Plaintiffs seek compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees, and all other appropriate remedies under 42 U.S.C. § 1983, the U.S. Constitution, and applicable provisions of California law.

4.  Defendants engaged in conduct that was administrative and investigative rather than prosecutorial. This includes issuing subpoenas and making public accusations of felonious conduct without evidence, which are not actions protected by prosecutorial immunity.

5.  The complaint will set forth allegations that the defendants' actions were motivated by animus and discrimination based on race, language, disability status, and other protected characteristics. Such conduct is also not protected by prosecutorial immunity, as it does not relate to the legitimate exercise of prosecutorial discretion but rather to discriminatory enforcement practices.

6. The Defendants are credibly accused within this complaint of violating the plaintiffs' constitutional rights, including equal protection and due process, through their actions. Prosecutorial immunity does not extend to actions that violate constitutional rights, especially when such actions are not part of the judicial process.

7. The Defendants weaponized the civil litigation process as a tool for intimidation and retaliation, rather than for legitimate legal purposes. This misuse of the legal process—including intrusive discovery demands and unsupported public accusations—falls well outside the protective scope of prosecutorial immunity.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides federal jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. Jurisdiction is also proper under 28 U.S.C. § 1343(a)(3) and (a)(4), which confer jurisdiction over actions authorized by 42 U.S.C. § 1983 to redress the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States.

9. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. The state law claims arise from a common nucleus of operative facts and involve overlapping factual and legal issues, making their adjudication in this forum appropriate and efficient.

10. Pursuant to the doctrine of pendent jurisdiction and the Supremacy Clause of the United States Constitution (U.S. Const. art. VI, cl. 2), this Court has the authority to adjudicate the state constitutional and statutory claims alleged herein. The exercise of jurisdiction by this Court precludes concurrent adjudication by the state courts with respect to these claims, to the extent necessary to afford complete relief in a unified proceeding.

11. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside in this district and a substantial part of the events or omissions giving rise to the claims occurred within the Central District of California.

### III. PARTIES

12. Plaintiff MODERN FLOOR SPECIALISTS, INC. ("MODERN") and its successor entity, CLEAN SOLUTION EXPERTS, INC. ("CLEAN"), are corporations organized under the laws of the State of California with their principal place of business in Los Angeles County. These companies are predominantly staffed by individuals from historically underrepresented groups, including monolingual Spanish speakers, racial and ethnic minorities, and persons with disabilities protected under the Americans with Disabilities Act (ADA).

13. Plaintiff Joseph Branch is a California resident, the owner-operator of CLEAN SOLUTION EXPERTS, INC. ("CLEAN"), and an African American who belongs to a historically disenfranchised racial group in Los Angeles.

4

14. Plaintiff Erica Perez is the owner-operator of MODERN FLOOR SPECIALISTS. She is the spouse of a U.S. military veteran and a monolingual Spanish speaker.

15. Plaintiff Martha Arcienega is an operator for both MODERN and CLEAN and is a manager and machine specialist of CLEAN and MODERN.

16. Plaintiff Alicio Mendoza is a California resident and an employee of MODERN and CLEAN.

17. Defendant CITY OF LOS ANGELES is a municipal entity subject to suit under 42 U.S.C. § 1983 and Title II of the ADA.

18. Defendant HEIDI SOTO is The City Attorney for the City of Los Angeles and is sued in her official capacity.

19. Plaintiffs are currently unaware of the true names and capacities of Defendants sued herein as *John and Jane Does 1 through 10* (collectively, the "Doe Defendants"), and therefore sue these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when they are ascertained.

20. Upon information and belief, *John and Jane Doe Defendants* include but are not limited to other Deputy City Attorneys, investigators, legal clerks, and paralegals employed by the Los Angeles City Attorney's Office who actively participated in the discriminatory, retaliatory, and unconstitutional conduct described herein. These individuals acted in concert with Defendant Heidi Soto and shared common intent and purpose in depriving Plaintiffs of their constitutional and statutory rights.

21. Specifically, Doe Defendants include:

    a. **Deputy City Attorney Joshua Crowell**, who participated in subpoena issuance, coordinated discovery demands, and authored or authorized written accusations of felony conduct against Plaintiff Alicio Mendoza without evidentiary basis;

    b. **Deputy City Attorney Nikhail Dandekar**, who supported and implemented retaliatory litigation tactics, including issuing subpoenas and coordinating intrusive discovery without protective orders;

    c. **Other unknown employees** of the City Attorney's Office or affiliated entities who provided instruction, authorization, or approval for acts of discrimination, coercion, and misuse of process described in this Complaint.

22. Plaintiffs allege that each of the Doe Defendants acted under color of state law and within the scope of their official duties, and that each knowingly participated in or failed to prevent constitutional violations through either direct conduct or deliberate indifference.

23. Plaintiffs further allege that the actions of the Doe Defendants were motivated, at least in part, by impermissible animus based on Plaintiffs' race, language background, disability status, union affiliation, and association with military veterans, and that such motivations materially contributed to the harm Plaintiffs suffered.

24. At all relevant times, each Doe Defendant was a proximate cause of the injuries alleged herein, and Plaintiffs reserve the right to amend this Complaint to name such individuals when their identities are confirmed through discovery.

## IV. STATEMENT OF FACTS

25. On October 13, 2023, the Los Angeles City Attorney's Office issued subpoenas to Plaintiff Modern Cleaning Solutions, Inc. ("MODERN") and a related entity, CLEAN SOLUTION EXPERTS, INC. ("CLEAN"), seeking records and sworn testimony in connection with an unspecified investigation [1].

26. Around the same time, an individual named Bernardo Ortiz filed a complaint with the California Labor Commissioner against one or more of MODERN's client entities.

27. Plaintiffs retained attorney Frances Prizzia to represent them in responding to both the subpoenas and the Labor Commissioner complaint.

28. Shortly thereafter, Ms. Prizzia experienced a severe medical crisis—reported to be either a concussion or a nervous breakdown—and withdrew from representation due to health-related reasons.

29. Plaintiffs' successor counsel formally notified the City Attorney's Office of the substitution of counsel and of Ms. Prizzia's medical condition. *A true and correct copy of the email correspondence is attached hereto as Exhibit A.*

30. Rather than acknowledging this notice in good faith, Deputy City Attorney Heidi Soto accused Plaintiffs of acting in bad faith and characterized their attorney's medical withdrawal as a tactic to delay compliance.

---

[1] The City Attorney subpoena dated October 13, 2023, includes "MENDOZA ENTERPRISE" and CARDENAS but the City Attorney did not include this party in their civil complaint against the plaintiff's; which is identified as *City of Los Angeles v. Modern Floor Specialists et al.*, No: 24STCV18842.

7

31. The Los Angeles City Attorney's Office, through their Deputy City Attorney, denied the Freedom of Information Act Request Plaintiffs sent to City Attorney's Office. *See Exhibit B – Denial of FOIA Request.*

32. In response, Plaintiffs, through counsel, agreed to fully comply with all subpoenas. This cooperation was expressly conditioned on the City Attorney's assurance that no civil or criminal action would be pursued against Plaintiffs. *See Exhibit C* (Subpoena *prior to any civil action*).

33. Relying on that assurance, Plaintiffs submitted confidential business records and participated in sworn testimony without objection or delay.

34. Despite Plaintiffs' cooperation, Defendant Soto again accused them of bad faith and noncompliance, disregarding both the documentary record and the express in light of subpoenaed testimony.

35. Shortly thereafter, the City Attorney's Office, in violation of the agreement to testify, filed a civil complaint against the Plaintiffs and related entities, alleging wage theft. The lawsuit, brought in the name of "The People of the State of California," intentionally (and conveniently) bypassed the administrative enforcement mechanisms of the California Labor Commissioner and instead functioned as a punitive legal instrument against Plaintiffs. *See Exhibit D – People's Amended Complaint.*

36. During discovery in the above-referenced matter, Defendant Soto issued intrusive requests seeking the personal financial records of the individual plaintiffs; and she did so with no protective order in place. These demands were wholly disproportionate to the civil action, had no bearing on any parties' claims or defenses, and were specifically crafted to target Plaintiffs in their personal capacities without legal justification.

37. Plaintiff Erica Perez is the owner-operator of MODERN. She is the spouse of a U.S. military veteran and a monolingual Spanish speaker. Her protected status as racial minority was well known to Defendant Soto and the City of Los Angeles.

38. Plaintiff Joseph Branch is the owner-operator of CLEAN. He is a Black man and thus, a member of a historically disenfranchised racial group in Los Angeles. He and his co-plaintiffs were subjected to disproportionate scrutiny, demands for financial disclosures, and unfounded criminal allegations from the government defendants who, in selective fashion, do not apply the same level of pressure to non-minority business owners and operators within LA County.

39. Plaintiff Martha Arcienega serves as an operator for both MODERN and CLEAN and represents employees with disabilities under the Americans with Disabilities Act (ADA). Despite her mere organizational role in both business, she was also singled out and subject to increased, hostile, and selective legal scrutiny based on her minority status.

40. Plaintiff Alicio Mendoza is a manager and supervisor of both MODERN and CLEAN. He is a native Spanish speaker and represents Spanish-speaking employees as well as workers engaged in protected union organizing. His advocacy on behalf of workers was well-known to the defendants and met with the same targeted and hostile discovery efforts, harassment, and selective prosecution as his co-plaintiffs.

41. During the litigation, Defendant Soto accused him of multiple felonies, including brandishing a firearm at a witness and having a criminal deposition, Mr. Mendoza invoked his Fifth Amendment right against self-incrimination in response to these allegations. Rather than respecting this constitutional protection, Defendant Soto mocked him on the record and went

9

public with her unfounded and baseless allegations. *See Exhibit E* – Email from Matic to Deputy Attorney Joshua Crowell.

42. Indeed, no criminal charges were ever filed against Mr. Mendoza, and no evidence was introduced to support Soto's accusations. Nonetheless, the City continued to demand his full personal financial disclosures, asserting that such cooperation was necessary to avoid further sanctions in the civil litigation with the strong inference that failure to do so would lead to criminal charges.

43. Upon information and belief, Defendant Soto, in concert with one or more Deputy City Attorneys (collectively, "Deputy John Does"), improperly advised representatives of the Maintenance Cooperation Trust Fund whom they were representing to direct subpoenaed witnesses to provide defamatory, false, and misleading testimony about Plaintiffs and their vendors.

44. Plaintiffs further allege, upon information and belief, that the City of Los Angeles has systematically treated corporate defendants more favorably than individual operators and workers, granting procedural leniency to corporations while subjecting individuals from marginalized communities to aggressive and punitive tactics. *See Exhibit F* – Complaint to Los Angeles City Clerk.

45. The conduct of Defendant Soto and the City Attorney's Office reflects an institutionalized practice of retaliation and discrimination, rather than an isolated incident. The City's litigation posture in this case aligns with a broader pattern of predatory enforcement, prioritizing political visibility over lawful, measured prosecution.

46. This pattern evidences a breakdown in the City's prosecutorial discretion. The aggressive and arbitrary use of subpoenas, filings, and discovery demands; and the weaponization of civil litigation and procedure—particularly against Plaintiffs known to belong to protected groups—has converted litigation from a lawful mechanism to recover duly owed damages into an instrument of intimidation and coercion.

47. Plaintiffs, through counsel, notified the City of Los Angeles and the City Attorney's Office of the specific conduct of the Deputy City Attorney. Despite this notice, both the City and the City Attorney's Office took no corrective action and expressly or constructively ratified the Deputy City Attorney's conduct by failing to address or remediate it.

### General Allegations of Official Policy of Discrimination by the Los Angeles City Attorney's Office not covered by Immunity.

49. Further evidence of this pattern was seen last month when pro-Palestinian protesters accused Los Angeles City Attorney Hydee Feldstein Soto of bias and selective prosecution. They argued that charges brought against them for blocking traffic during a demonstration were inconsistent with how other similar protests have been handled by the City Attorney's Office, suggesting selective prosecution based on their political views. The protesters sought to have their cases dismissed on these grounds. [2]

50. Even the Defendants' internal office employees are not safe from the wrath of Defendant Soto, as There have been claims from within the City Attorney's Office regarding discriminatory

---

[2] https://spectrumnews1.com/ca/southern-california/politics/2025/04/22/pro-palestinian-protesters-accuse-la-city-attorney-hydee-feldstein-soto-of-bias

treatment and retaliation based on race. For example, an employee alleged facing retaliation after complaining about racial discrimination and other issues, and subsequently sought damages from the City. [3] Another high-ranking official alleged that her career was derailed after reporting discriminatory practices and legal violations within the office. [4]

51. The City of Los Angeles has faced lawsuits alleging discrimination and harassment, including equal pay violations, gender discrimination, and failure to prevent discrimination, some of which have involved the City Attorney's Office. [5] Additionally, legal service providers have detailed cases of race discrimination and harassment brought against city agencies, including the City Attorney's Office. [6]

52. The City's undeniable pattern of misconduct departs from the standards of professional decorum expected of officers of the court in civil litigation and constitutes unconstitutional conduct motivated by bias and improper purpose.

53. Defendant Soto's decision-making and litigation strategy reflect the kind of impermissible motive-based discrimination also identified in *City of Los Angeles v. PricewaterhouseCoopers, LLC*, 84 Cal.App.5th 466 (2022), wherein adverse government actions based on protected characteristics—such as race, language, disability, or associational status—violate constitutional protections. *See Exhibit G* - pdf of case)

---

[3] https://insider.govtech.com/california/news/l-a-city-attorney-is-searching-through-employee-emails-staffer-alleges

[4] https://www.mcnicholaslaw.com/retaliation-claim-filed-against-la-city-attorneys-office-criminal-branch-chiefs-career-dismantled-for-reporting-legal-violations/

[5] https://kfiam640.iheart.com/featured/la-local-news/content/2023-07-16-city-wants-attorneys-gender-pay-disparity-case-dismissed/

[6] https://urbaniclaw.com/la-pays-discrimination-los-angeles-discrimination-attorney/

12

54. Defendant Soto further demonstrated animus through procedural manipulation and unprofessional conduct in the underlying civil matter. For example, her office deliberately scheduled a meet-and-confer session during Ramadan, when Plaintiffs' counsel was known to be fasting, and her deputy attorney repeatedly laughed during the meeting, dismissing substantive legal concerns despite knowledge of opposing counsel's religious obligations. *See Exhibit H –* Meeting Confirmation.

55. The cumulative effect of Defendant Soto's actions—including retaliatory litigation, discriminatory enforcement, baseless accusations, and targeted emotional provocation—has deprived Plaintiffs of equal protection, procedural due process, and meaningful access to justice.

56. These actions constitute violations of both federal and California law and warrant judicial intervention to remedy ongoing harm and to prevent future misconduct.

57. The actions of Defendant Heidi Soto are not protected by absolute prosecutorial immunity; that is, conduct intimately associated with the judicial phase.

58. The conduct at issue here—including issuing civil subpoenas, making public accusations of criminal behavior without formal charges, coercing discovery compliance under threat of litigation and "court intervention", and retaliating against Plaintiffs for exercising constitutional rights—constitutes administrative, investigatory, and advocacy-related behavior outside the courtroom**.**

59. In particular, Deputy Attorneys Joshua Crowell, Nikhail Dandekar, personally engaged in the issuance of subpoenas, the coordination of investigatory efforts, and publicized accusations of criminal conduct unsupported by formal charges or evidence. *See Exhibit I –* Letter to Matic from Crowell.

60. Furthermore, The City Attorney Office's decision to pursue litigation after promising non-litigation in exchange for cooperation, and her office's targeting of Plaintiffs based on race, language, and disability, reflect misconduct that is motivated by impermissible animus and divorced from legitimate prosecutorial discretion.

61. As previously demonstrated, this discriminatory pattern is not isolated to Plaintiffs. In a separate civil matter, *City of Los Angeles v. PricewaterhouseCoopers*, the City was found to have engaged in a sustained campaign of retaliatory and biased conduct against whistleblowers and internal employees who attempted to expose misconduct within the City Attorney's Office. The conduct included suppression of internal reports, targeting of employees based on their ethnicity and disability status, and the misuse of legal processes to punish protected speech. The facts from that case demonstrate that the City has institutional knowledge of similar misconduct and has failed to adopt meaningful reforms or disciplinary actions in response.

62. Defendant Soto's conduct, therefore, falls squarely within the category of government action that is subject to liability. It was investigative in form, coercive in purpose, and discriminatory in execution—none of which are shielded by prosecutorial immunity.

## V. CAUSES OF ACTION

### CLAIM ONE: 42 U.S.C § 1983 – Fifth Amendment Violations

63. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

64. Under the Fifth Amendment to the United States Constitution, no person shall be compelled in any criminal case to be a witness against himself. This right extends to civil proceedings when a realistic threat of criminal liability exists.

65.  During civil litigation initiated by the City of Los Angeles, Plaintiff Alicio Mendoza invoked his constitutional right under the Fifth Amendment to avoid self-incrimination.

66. Defendant Heidi Soto, acting under color of state law and on behalf of the City, through her authority and in coordination with other Deputy City Attorneys of the City of Los Angeles, openly mocked Mr. Mendoza's invocation of this right on the record.

67. Defendant Soto, in retaliation for his refusal to waive to his Fifth Amendment rights, proceeded to publicly accuse Mr. Mendoza of committing multiple felonies, including (a) brandishing a firearm at a witness and (b) having a felony criminal record, without offering any supporting evidence or initiating formal criminal charges.

68.  When requested further information, documentary or testimonial evidence in regard to these accusations, through the formal discovery process, Defendant Soto, through her authority and in coordination with other Deputy City Attorneys of the City of Los Angeles, withheld, and continues to withhold such evidence.

69. These accusations were made not as part of any criminal proceeding, but within the context of a civil wage enforcement action, thereby placing undue pressure on Mr. Mendoza to abandon his constitutional protections in order to protect his position in the civil matter.

70.  Defendants further demanded invasive financial disclosures from all Plaintiffs and conditioned avoidance of further criminal and civil sanctions—on the waiver of their Fifth Amendment rights.

15

71.  As a result of these actions, Plaintiffs experienced a chilling effect on their ability to assert constitutionally protected rights and were placed in a coerced and constitutionally impermissible position: disclose potentially incriminating information or risk adverse consequences in an enforcement action.

72. The acts and omissions of Defendants constitute a violation of Plaintiffs' Fifth Amendment right against compelled self-incrimination, as incorporated against state actors through the Fourteenth Amendment, and are actionable under 42 U.S.C. § 1983.As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered emotional distress, anxiety, reputational damage, and a deprivation of constitutional rights, for which they are entitled to compensatory damages, punitive damages, and equitable relief.

### CLAIM TWO: Violation of the Right to Privacy in Violation of California Constitution Art. 1; § 1, and the 14th Amendment of the U.S Constitution.

73. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

74. Article I, § 1 of the California Constitution guarantees every individual the inalienable right to privacy. Likewise, the Due Process Clause of the Fourteenth Amendment to the United States Constitution protects individuals against arbitrary governmental intrusions into personal and confidential matters, including financial and associational privacy.

75. Plaintiffs Erica Perez, Joseph Branch, Alicio Mendoza, and Martha Arcienega are owner-operators, managers, and representatives of MODERN and CLEAN. Each maintains a reasonable expectation of privacy in personal financial records, medical history, union affiliations, disability

16

status, and familial and associational relationships, all of which are protected under California and federal law.

76. During the course of civil litigation, Defendant Heidi Soto, acting under color of state law and on behalf of the City of Los Angeles, issued discovery demands that were intrusive, disproportionate, and lacking in legal justification. These demands sought sensitive personal financial information from individuals not named as parties to the underlying lawsuit.

77. These privacy-invasive requests were made in the absence of a compelling governmental interest, without narrowly tailoring the scope of inquiry, and with the intent to intimidate, harass, and penalize Plaintiffs for their exercise of constitutional rights.

78. Specifically, Defendant Soto issued demands for personal bank records, credit histories, and other financial documentation from Plaintiffs, including Erica Perez, a monolingual Spanish-speaking spouse of a military veteran, and Joseph Branch, a Black business owner with no formal criminal charges pending against him.

79. Additionally, Defendant Soto sought to expose protected associational affiliations and medical histories—such as Ms. Arcienega's representation of employees with disabilities under the Americans with Disabilities Act (ADA) and Mr. Mendoza's role in protected union-related activities—without demonstrating any legal basis or relevance to the underlying wage claims.

80. The privacy violations were compounded by Defendant Soto's public accusations, made during civil proceedings, which falsely implied criminal conduct and exposed Plaintiffs to reputational harm without due process or evidentiary support.

81. Plaintiffs did not consent to the disclosure of their private information, and less intrusive means were readily available to obtain relevant facts, if any. The City of Los Angeles failed to pursue those means or justify the scope of its intrusions.

82. These acts, committed under the guise of civil litigation, constitute an unlawful violation of Plaintiffs' right to privacy under the California Constitution and the federal Due Process Clause, actionable under 42 U.S.C. § 1983.

83. As a direct and proximate result of these unconstitutional intrusions, Plaintiffs suffered harm including emotional distress, anxiety, reputational damage, and a loss of confidence in the integrity of public institutions. Plaintiffs are entitled to compensatory damages, punitive damages, attorneys' fees, and declaratory and injunctive relief to prevent future violations.

84. Plaintiffs are entitled to injunctive relief, declaratory judgment, compensatory damages, punitive damages, and all other appropriate remedies pursuant to 42 U.S.C. § 1983 and California law.

### CLAIM THREE: 42 U.S.C § 1983 - Violation of Equal Protection

84. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

85. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits state actors from selectively enforcing the law or taking adverse governmental actions based on race, language, disability status, or other protected characteristics. This protection is enforceable against state and local officials through 42 U.S.C. § 1983.

86. At all times relevant to this action, Defendant Heidi Soto, acting under color of state law and in her official capacity as a Deputy City Attorney for the City of Los Angeles, targeted Plaintiffs for differential and discriminatory treatment based on their race, language, disability status, union affiliation, and/or familial association with military service members.

87. Upon information and belief, Defendant Soto does not engage in hostile and harassing intimidation tactics as part of her employment with the City of LA, such as those lodged against the Plaintiffs, against non-minorities.

88. Plaintiff Erica Perez, a monolingual Spanish-speaking woman and spouse of a U.S. military veteran, was subjected to intrusive discovery demands and disparaging characterizations, despite her protected status and non-party role in the litigation.

89. Plaintiff Joseph Branch, a Black man and owner-operator of CLEAN, was subjected to unsubstantiated accusations of criminal conduct, including felony offenses, and was singled out for disproportionate financial scrutiny not imposed on similarly situated parties.

90. Plaintiff Martha Arcienega, who represents workers with disabilities under the Americans with Disabilities Act (ADA), was likewise subjected to targeted and disproportionate legal pressure, including intrusive questioning and documentation demands related to her advocacy role.

91. Plaintiff Alicio Mendoza, a native Spanish speaker, and a known advocate for Spanish-speaking and unionized employees, was also targeted with hostility and overbroad discovery requests, and his protected Fifth Amendment assertions were met with retaliation and public ridicule.

19

92. Defendants' conduct was not based on neutral legal criteria or objective enforcement priorities. Rather, it was motivated by animus toward Plaintiffs' protected characteristics and associations, including race, language background, disability affiliation, union advocacy, and veteran family status.

93. By contrast, the City of Los Angeles has consistently offered procedural leniency and deference to similarly situated corporate defendants who do not share Plaintiffs' protected characteristics, thereby evidencing a pattern of discriminatory enforcement.

94. The cumulative effect of Defendants' actions constitutes intentional and invidious discrimination, violating Plaintiffs' rights to equal protection under the Fourteenth Amendment.

95. This discrimination was further exacerbated by acts of procedural manipulation—such as scheduling a meet-and-confer during Ramadan despite known religious observance—and public conduct intended to humiliate and marginalize Plaintiffs and their counsel.

96. The City of Los Angeles, acting through Defendant Soto and other Deputy City Attorneys, maintained or condoned this discriminatory pattern and failed to implement adequate safeguards to prevent such misconduct.

97. The cumulative effect of the Defendants' actions, including retaliatory litigation and discriminatory enforcement, suggests a broader pattern of animus and bias against the plaintiffs' protected characteristics.

98. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered constitutional injury, emotional harm, reputational damage, and economic consequences. Plaintiffs are entitled to compensatory damages, punitive damages, injunctive relief, and attorneys' fees under 42 U.S.C. § 1988.

99. Plaintiffs are entitled to injunctive relief, compensatory damages, punitive damages, and all available remedies under 42 U.S.C. § 1983.

### CLAIM FOUR: Intentional Infliction of Emotional Distress

100.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

101.     Under California law, a defendant is liable for intentional infliction of emotional distress where they (1) engage in extreme and outrageous conduct, (2) intended to cause, or acted with reckless disregard for the probability of causing, emotional distress, and (3) such conduct directly results in severe emotional distress.

102.     Defendants, acting under color of state law and within the scope of their official duties, engaged in conduct so extreme and outrageous as to exceed the bounds of human decency.

103.     Such conduct includes, but is not limited to:

a. Publicly and baselessly accusing Plaintiff Alicio Mendoza of felony conduct, including brandishing a weapon and possessing a criminal record, despite the lack of any formal charges;

b. Mocking Plaintiff's exercise of his constitutional right to remain silent;

c. Demanding the disclosure of private financial records of Plaintiffs, including Erica Perez and Joseph Branch, under threat of litigation penalties;

d. Breaking prior assurances that no civil or criminal actions would be filed, despite Plaintiffs' full cooperation; and

21

e. Disregarding the known disability and medical vulnerability of Alicio Mendoza in aggressive legal maneuvers.

These actions were either intentionally designed to cause distress or were undertaken with conscious disregard for the high probability of causing severe emotional suffering.

104.    Plaintiffs experienced extreme mental anguish, emotional trauma, insomnia, anxiety, humiliation, and reputational damage as a direct consequence of Defendants' conduct.

105.    The injuries suffered were proximately caused by the City of Los Angeles and Defendant SOTO, whose conduct was intentional, reckless, and unjustified by any legitimate public interest.

106.    Plaintiffs are entitled to general and special damages, punitive damages, and any further relief the Court deems just and proper.

**CLAIM FIVE: Retaliation in Violation of 42 U.S.C § 1983,
And California Labor Code §§ 98.6, 1102.5**

107.    Plaintiffs re-allege and incorporate by reference all prior paragraphs as though fully set forth herein.

108.    Plaintiffs engaged in protected activity under federal and state law, including:

a.    Asserting their Fifth Amendment rights in a civil proceeding ;

b.    Retaining legal counsel to defend against investigative demands and subpoenas;

22

c. Cooperating with a government investigation under assurances of non-litigation; and

d. Participating in proceedings under the jurisdiction of the California Labor Commissioner.

109. These actions are protected by the United States Constitution and the California Labor Code, including §§ 98.6 (protecting participation in labor investigations) and 1102.5 (prohibiting retaliation against whistleblowers and participants in protected legal processes).

110. Shortly after Plaintiffs engaged in this protected activity, Defendants retaliated against them by:

a. Filing a civil wage theft lawsuit after promising not to pursue litigation;

b. Publicly accusing Plaintiff Alicio Mendoza of serious felonies without charge;

c. Requiring disclosure of private financial information from non-party individuals, including Erica Perez and Joseph Branch.

111. The adverse actions taken by Defendants were causally connected to Plaintiffs' exercise of their legal rights and would deter a reasonable person from further engagement in such protected conduct.

112. The retaliatory intent behind Defendants' legal actions is further evidenced by the sequence and nature of enforcement actions.

113.    Defendants' conduct was not motivated by legitimate legal necessity but rather by retaliatory intent, in violation of clearly established constitutional and statutory protections.

114.    As a direct and proximate result, Plaintiffs suffered economic damages, reputational harm, emotional distress, and violation of their statutory and constitutional rights.

115.    Plaintiffs are entitled to declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees under 42 U.S.C. § 1988 and California law.

### CLAIM SIX: Municipal Liability
### (Pursuant to *Monell v. Dept. of Social Services*)

116.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

117.    At all times relevant, Defendant City of Los Angeles—acting through the City Attorney's Office—maintained official or de facto customs, practices, and policies that were the moving force behind Plaintiffs' constitutional injuries. These include:

a. A pattern of retaliatory litigation against individuals who invoke constitutional rights or cooperate with labor enforcement processes;

b. A custom of coercing witnesses and litigants to waive rights under the Fifth and Fourteenth Amendments through threats of legal process or reputational harm;

c. Disparate treatment of enforcement targets based on race, language, disability, or association with protected labor activity, in violation of Equal Protection guarantees;

24

d.  The routine misuse of discovery and subpoena power to intimidate and harass party individuals in civil litigation; and

e.  The deliberate failure to train, supervise, and discipline attorneys—particularly those in supervisory roles—on constitutional limits applicable to investigative subpoenas, discovery, retaliation, and due process.

118.    Upon information and belief, Defendants continue to engage in such conduct despite ongoing complaints made to the office's management and policymakers. These customs and omissions reflect a broader culture of institutional tolerance for rights violations within the City Attorney's Office.

119.    Upon information and belief, despite notice of prior complaints and internal opportunities to intervene, no remedial training or disciplinary action was taken against Defendant Soto or similarly situated attorneys.

120.    The City of Los Angeles also ratified the misconduct of the City Attorney's Office by failing to investigate, discipline, or repudiate the office conduct after being placed on notice. The defendants continued prosecution of civil litigation based on unconstitutional tactics, despite Plaintiffs' documented cooperation and the absence of legal justification, further demonstrates municipal endorsement.

121.    Plaintiffs further allege that the City's failure to supervise and discipline officials who engage in discriminatory litigation is well-documented.

122.    Upon information and belief, In *City of Los Angeles v. PricewaterhouseCoopers*, evidence emerged of the City Attorney's Office suppressing whistleblower complaints and weaponizing internal investigations against employees on the basis of race, disability, and

25

protected speech. These facts demonstrate a municipal custom of retaliation and selective enforcement that mirrors the actions taken against the Plaintiffs here.

123. Despite being placed on notice through litigation and internal reports, the City has not meaningfully reformed its practices, thereby ratifying unconstitutional conduct and acting with deliberate indifference to the risk of future violations. The misconduct in this case is consistent with that institutional pattern.

124. The above-described policies, customs, and omissions were the proximate cause of injuries to Plaintiffs, including violations of their rights under the Fifth and Fourteenth Amendments, and are actionable under 42 U.S.C. § 1983.

125. As a direct and foreseeable result of the City's acts and omissions, Plaintiffs suffered constitutional injury, emotional distress, financial losses, reputational harm, and a deprivation of civil rights.

126. Plaintiffs seek compensatory damages, punitive damages (where permitted), injunctive relief to prevent recurrence of unlawful policies, declaratory relief, and attorneys' fees under 42 U.S.C. § 1988.

**CLAIM SEVEN: California Bane Act, Civil Code § 52.1**

127. Plaintiffs re-allege and incorporate by reference all prior paragraphs as though fully set forth herein.

128. The Tom Bane Civil Rights Act (Cal. Civ. Code § 52.1) protects individuals from interference with their state or federal rights through threats, intimidation, or coercion.

129. Defendants, acting under color of law and with authority conferred by the City of Los Angeles, knowingly engaged in conduct intended to interfere with Plaintiffs' constitutional rights, including the right to due process, the right against self-incrimination, the right to privacy, and the right to be free from disability discrimination.

130. Specifically, Defendants used the threat of public litigation, unfounded criminal accusations, and demands for financial disclosures to coerce Plaintiffs into abandoning their legal rights.

131. Defendants' coercive tactics included:

   a. Mocking Alicio Mendoza's invocation of the Fifth Amendment;

   b. Threatening to expose him to criminal liability despite no formal charges;

   c. Demanding the disclosure of personal financial records under legal duress; and

   d. Leveraging the City's power to file suit despite prior assurances of non-litigation

132. Plaintiffs did not voluntarily waive their rights. Defendants' conduct was designed to instill fear, suppress protected conduct, and punish Plaintiffs for asserting their civil liberties.

128. These acts were neither justified by any legitimate law enforcement objective nor narrowly tailored to achieve a compelling interest.

129. As a result of Defendants' violation of the Bane Act, Plaintiffs suffered severe emotional distress, economic harm, reputational damage, and interference with their constitutional rights.

130. Plaintiffs are entitled to statutory damages, compensatory damages, punitive damages, and attorneys' fees under Cal. Civ. Code §§ 52.1(h) and 52(b).

**CLAIM EIGHT: Unruh Civil Rights Act, Cal. Civ. Code § 51**

131. Plaintiffs re-allege and incorporate by reference all prior paragraphs as though fully set forth herein.

132. The Unruh Civil Rights Act, Cal. Civ. Code § 51 guarantees that all persons in California are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments, regardless of their race, disability, gender, or other protected status.

133. Although the Unruh Act typically applies to private businesses, California courts have recognized that public agencies and officials may be held liable under the statute when they engage in discriminatory conduct analogous to that of a business entity offering public services or imposing regulatory authority. See: *Gibson v. Cnty. of Riverside*, 181 F. Supp. 2d 1057, 1090 (C.D. Cal. 2002).

134. Plaintiffs Erica Perez and Alicio Mendoza each belong to one or more protected classes under the Unruh Act:

 a. Erica Perez is a Latina, female, monolingual Spanish speaker, and the spouse of a U.S. veteran;

 b. Alicio Mendoza is a senior citizen and a person with a qualifying disability.

135. Defendants, acting in their official capacities, imposed arbitrary, discriminatory, and unjustified legal burdens on Plaintiffs in a manner inconsistent with their treatment of similarly situated individuals who do not belong to these protected classes.

28

136. These discriminatory acts include:

    a. Filing litigation after representing that no suit would be filed;

    b. Targeting personal financial data without a basis or relevance to the underlying case;

    c. Issuing public, unsupported accusations of criminal conduct; and

    d. Failing to account for or accommodate Alicio Mendoza's disability.

137. This conduct reflects animus and unlawful discrimination based on race, age, gender, and disability, in violation of Plaintiffs' rights to be treated with dignity and equality.

138. As a proximate result of the violations of the Unruh Act, Plaintiffs suffered financial losses, humiliation, emotional distress, and reputational damage.

139. Plaintiffs are entitled to statutory damages, injunctive relief, attorneys' fees, and punitive damages under California Civil Code §§ 51 and 52.

### CLAIM NINE: Abuse of Process

140. Plaintiffs re-allege and incorporate by reference all prior paragraphs as though fully set forth herein.

141. Under California law, a claim for abuse of process requires: (1) an ulterior motive in the use of the judicial process; and (2) a willful act in the use of that process not proper in the regular conduct of the proceeding.

29

142. Defendants initiated legal process in the form of civil litigation against Plaintiffs under the guise of wage enforcement, despite previously assuring Plaintiffs that no legal action would be taken in exchange for their cooperation.

143. Defendants then used the civil discovery process not for legitimate litigation purposes, but to pressure Plaintiffs into waiving constitutional rights and disclosing private financial data irrelevant to the underlying claims.

144. The misuse of subpoenas, public filings, and discovery demands had no valid connection to wage enforcement and instead served an ulterior purpose: to retaliate against Plaintiffs, coerce compliance, and punish the invocation of protected rights.

145. Defendant Soto's actions, including mocking Fifth Amendment invocations and filing unsupported felony accusations in court documents, exemplify a willful departure from fair legal procedure.

146. The conduct alleged herein constitutes a classic abuse of process, marked by improper motive and intentional misuse of judicial tools for collateral purposes.

147. The abusive litigation tactics alleged herein, particularly those designed to chill protected activity, fall outside any legitimate legal process and are not protected by the First Amendment. See *McDonald v. Smith*, 472 U.S. 479 (1985).

148. As a direct and proximate result, Plaintiffs suffered damages including emotional distress, economic loss, reputational harm, and a chilling of their ability to assert legal rights.

149. Plaintiffs seek general and special damages, punitive damages, and injunctive relief as appropriate under California common law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request judgment against Defendants as follows:

    a. For general and special damages in an amount of $10,000,000.00, OR according to proof at trial;

    b. For punitive damages against all applicable Defendants, where permitted by law;

    c. For injunctive relief to halt ongoing discriminatory and unconstitutional practices;

    d. For declaratory relief establishing the violations set forth herein;

    e. For statutory penalties and attorneys' fees under 42 U.S.C. § 1988 and applicable California statutes;

    f. For pre- and post-judgment interest as allowed by law; and

    g. For such other and further relief as this Court deems just and proper.

*//*

31

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all causes of action so triable.

Dated: May 27, 2025

Joshua Matic, Esq. (SBN 259070)
20651 Golden Springs Dr., #817
Walnut, CA 91789
Tel. (646) 389-4384
Fax. (310) 388-3047
joshuae@maticesq.com
*Attorney For Plaintiffs*

32