Joshua E. Matic (SBN 259070)
20651 Golden Springs Dr., #817
Walnut, CA 91789
Tel: (646) 389-4384
Fax: (310) 388-3047
Email: joshuae@maticesq.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTHA ARCIENEGA, ERICA PEREZ, JOSEPH BRANCH, and ALICIO (GALENO) MENDOZA, in their individual capacities.<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal corporation; MAYOR KAREN BASS, in her official capacity; CITY COUNCIL OF LOS ANGELES, in their official capacities; OFFICE OF THE LOS ANGELES CITY ATTORNEY; LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE; HYDEE FELDSTEIN SOTO, in her official capacity as City Attorney; GEORGE GASCÓN, in his personal capacity as former Los Angeles County District Attorney; MICHAEL J. BOSTROM, individually and in his official capacity; JESSICA B. BROWN, individually and in her official capacity; JOSHUA L. CROWELL, individually and in his official capacity; NIKHIL DANDEKAR, individually and in his official capacity; SONIA PEREZ, alleged representative of an illegal labor union,<br><br>        Defendants. | Case No.: 25-cv-04765-ODW-JPR<br><br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## I. <u>INTRODUCTION</u>

Plaintiffs respectfully submit this opposition to Defendants' Motion to Dismiss the First Amended Complaint. The motion is predicated on a fundamental misapprehension of the governing standards under Federal Rule of Civil Procedure 12(b)(6), as well as a disregard for the well-pleaded factual allegations that must be accepted as true at this stage of the proceedings. Defendants' attempt to inject self-serving denials and extrinsic declarations into the analysis is improper and should be disregarded. As demonstrated below, Plaintiffs have stated multiple plausible claims for relief, supported by detailed factual allegations throughout the complaint, and the motion to dismiss should be denied in its entirety.

The scope of review on a motion to dismiss is strictly limited to the contents of the complaint, documents incorporated by reference, and matters of judicial notice. See *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Extrinsic evidence, including self-serving declarations or denials by defendants, is not to be considered at this stage. The Ninth Circuit cautions against overuse of incorporation by reference to defeat plausible allegations. See *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018). The Court must not weigh evidence, resolve factual disputes, or make credibility determinations at this juncture.

## II. <u>LEGAL STANDARD</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests only the legal sufficiency of the complaint, not the merits of the case or the credibility of the parties. The Court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the nonmoving party. Dismissal is appropriate only where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See *Ashcroft v.*

2

*Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

The Ninth Circuit has repeatedly emphasized that a complaint survives if the facts, accepted as true, plausibly suggest entitlement to relief, and courts should not "pick off" allegations in isolation. See *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011). The Court must take well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. See *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012). This means that the detailed chronology and examples pled in the complaint must be credited at this stage, and the Court should not parse or disregard factual allegations that collectively support plausible claims for relief.

The standard is not whether the plaintiff will ultimately prevail, but whether the complaint is sufficient to cross the threshold of plausibility. See *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. The Court must not weigh evidence, resolve factual disputes, or make credibility determinations. See *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Instead, the question is whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

Layering Ninth Circuit specificity over the Supreme Court's guidance, the Court should recognize that the complaint's detailed chronology, factual examples, and supporting allegations must be credited in full. See *Starr*, 652 F.3d at 1216–17; *OSU Student Alliance*, 699 F.3d at 1078. The Court should not "pick off" allegations in isolation or disregard the context and pattern pled by Plaintiffs. The caution against overuse of incorporation by reference, as articulated in *Khoja*, further reinforces the need to confine review to the pleadings and to disregard defendants' extrinsic declarations and exhibits at this stage

3

The First Amended Complaint sets forth a detailed chronology of events, specific examples of misconduct, and factual allegations that collectively satisfy the plausibility standard required under Rule 12(b)(6). At this stage, the Court must accept these allegations as true and draw all reasonable inferences in Plaintiffs' favor, without parsing or disregarding the context and pattern pled. See *Starr v. Baca*, 652 F.3d 1202, 1216–17 (9th Cir. 2011); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012). The complaint's factual detail, including the timing, remarks, and conduct of Defendants, is more than sufficient to state plausible claims for relief.

### III. <u>ARGUMENT</u>

### 1. Prosecutorial Immunity and Administrative Conduct

Defendants assert that all federal claims against the individual City Attorney defendants are barred by prosecutorial immunity, contending that the alleged conduct arises solely from their roles in prosecuting a civil law enforcement action. This argument mischaracterizes both the scope of immunity and the factual allegations in the complaint. Absolute immunity is not a blanket protection for all conduct undertaken by government attorneys; rather, it is strictly limited to actions intimately associated with the judicial phase of the process, such as initiating and pursuing a prosecution. It does not extend to administrative, investigative, or extra-judicial acts, nor to conduct undertaken outside the core advocacy function. See *Butz v. Economou*, 438 U.S. 478, 512 (1978); *Lacey v. Maricopa County*, 693 F.3d 896, 912–13 (9th Cir. 2012).

The complaint specifically alleges that Defendants engaged in abusive discovery management, pecuniary sanctions demands, and intimidation tactics outside the legitimate scope of prosecutorial advocacy, including attending bankruptcy meetings for improper purposes and misusing privileged communications [FAC ¶¶ 18–21, 34–41, 40]. These actions are administrative and

4

investigative in nature, and thus fall outside the protection of absolute immunity. The Ninth Circuit has made clear that the functional approach controls: immunity attaches only to conduct that is "intimately associated with the judicial phase," and is "sparingly" applied to government actors. See *Garmon v. County of Los Angeles*, 828 F.3d 837, 843–45 (9th Cir. 2016) (immunity questions may turn on disputed facts about the function performed); *Miller v. Gammie*, 335 F.3d 889, 896–99 (9th Cir. 2003) (en banc).

Early resolution of immunity is disfavored when the facts are unclear or disputed as to the function performed. The complaint's detailed factual allegations must be accepted as true, and at this stage, the court cannot resolve the scope of immunity as a matter of law where the conduct alleged is not purely prosecutorial. See *Lacey*, 693 F.3d at 912–13; *Garmon*, 828 F.3d at 843–45. Plaintiffs have alleged that Defendants' conduct was not limited to courtroom advocacy, but included a pattern of abusive discovery, sanctions threats, and intimidation designed to extract pecuniary gain and suppress protected activity, all outside the core judicial function [FAC ¶¶ 18–21, 34–41, 40].

Defendants' assertion of prosecutorial immunity is premature and unsupported by the record at this stage. The complaint's allegations must be credited, and the motion to dismiss cannot be granted on immunity grounds where the function and purpose of the challenged conduct remain disputed and fact-bound.

**2. First Amendment Retaliation**

Plaintiffs allege that they engaged in protected activities, including filing bankruptcy, submitting California Public Records Act (CPRA) requests, and lodging discrimination complaints [FAC ¶¶ 64, 39]. The complaint further alleges that Defendants responded with overbroad discovery, threats of sanctions, and intimidation, including attending Plaintiffs' § 341(a) bankruptcy meeting for

improper purposes [FAC ¶¶ 65, 40]. These adverse actions were substantially motivated by Plaintiffs' protected activities and would chill a person of ordinary firmness [FAC ¶ 66]. The Ninth Circuit has articulated that a First Amendment retaliation claim requires (1) protected activity, (2) adverse action likely to chill, and (3) substantial motivation by retaliatory animus. See *Capp v. County of San Diego*, 940 F.3d 1046, 1053–54 (9th Cir. 2019); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543–45 (9th Cir. 2010). Retaliatory motive may be shown by circumstantial evidence, including timing and statements. See *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300–01 (9th Cir. 1999). The complaint's chronology and remarks plausibly allege retaliatory animus, and Defendants' attempt to dispute causation or the protected nature of Plaintiffs' activities is improper at this stage.

### 3. Fourth Amendment – Unreasonable Search and Seizure

Defendants contend that the service of discovery requests does not implicate the Fourth Amendment. However, the complaint alleges that Defendants, acting under color of law, served post-petition discovery demands for assets, liabilities, net worth, supervisor sheets, and other private information, in a manner that was overbroad, lacked particularity, and was pursued for pecuniary purposes rather than legitimate regulation [FAC ¶¶ 69–71]. The reasonableness of administrative subpoenas and government-driven discovery is a fact-intensive inquiry, requiring courts to examine the scope, relevance, and particularity of the requests. In *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113–14 (9th Cir. 2012), the Ninth Circuit held that subpoenas must be sufficiently limited in scope, relevant in purpose, and specific, and that courts must assess reasonableness in context. Similarly, in *FDIC v. Garner*, 126 F.3d 1138, 1143–44 (9th Cir. 1997), the court emphasized that enforcement of government subpoenas turns on particularized reasonableness, a fact-bound inquiry not suited for resolution on a motion to dismiss. Plaintiffs' allegations that the discovery

6

demands were abusive, untethered to legitimate ends, and designed for pecuniary extraction are sufficient to state a plausible Fourth Amendment claim at this stage.

### 4. Fifth Amendment – Self-Incrimination

Defendants argue that Plaintiffs cannot state a Fifth Amendment claim because they were not compelled to be witnesses against themselves in a criminal case. This argument misstates both the law and the facts alleged. The complaint details how Defendants' interrogatories specifically targeted potential criminal exposure, including decade-old allegations against Plaintiff Mendoza, and threatened sanctions for invoking privilege, thereby coercing Plaintiffs to make incriminating disclosures [FAC ¶¶ 73–75]. The Ninth Circuit has made clear that the compulsion analysis is contextual and that a § 1983 claim lies where compelled statements are used in a criminal case. See *Stoot v. City of Everett*, 582 F.3d 910, 918–20 (9th Cir. 2009). The Fifth Amendment may be asserted in civil proceedings to avoid compelled incrimination, and coercive penalties matter. See *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1263–64 (9th Cir. 2000). The Supreme Court in *Chavez v. Martinez*, 538 U.S. 760, 766 (2003), further supports the theory that coercive mechanisms, including sanctions threats, can constitute compulsion. Plaintiffs' allegations that Defendants used discovery and sanctions threats to coerce incriminating responses are sufficient to state a plausible Fifth Amendment claim, and the fact-bound nature of compulsion and privilege assertion precludes dismissal at this stage

### 5. Fourteenth Amendment – Equal Protection and Due Process

Defendants argue that Plaintiffs fail to state an equal protection claim, asserting that the complaint lacks specific allegations of discriminatory purpose and causation. The complaint, however, alleges that Defendants ratified and engaged in intentional discrimination, including

mocking ADA complaints, making derogatory remarks about religion and ethnicity, and labeling Plaintiffs "Janitorial Defendants" [FAC ¶¶ 77–78]. These acts were class-based, produced disparate treatment, and denied Plaintiffs equal protection under the law [FAC ¶ 78]. The complaint also alleges procedural due process violations, including obstruction of access to public records, filing of image-only PDFs to impede meaningful participation, and deprivation of notice and an opportunity to be heard [FAC ¶¶ 79–81]. Allegations of discriminatory motive and adverse treatment can state a claim at the pleading stage. See *Ballou v. McElvain*, 29 F.4th 413, 422–23 (9th Cir. 2022). Backward-looking access claims are actionable where official actions frustrate pursuit of legal claims. See *Delew v. Wagner*, 143 F.3d 1219, 1222–23 (9th Cir. 1998).

Due process requires adequate notice and opportunity tailored to the context. See *Brewster v. Board of Educ.*, 149 F.3d 971, 984 (9th Cir. 1998). The complaint's allegations plausibly implicate both strands of equal protection and procedural fairness, and factual disputes must be resolved later.

### 6. Bankruptcy and Supremacy Clause Violations

Defendants argue that Plaintiffs' claims for violation of the bankruptcy stay under 11 U.S.C. § 362 fail because Plaintiffs were not the bankruptcy petitioners and the bankruptcy court subsequently annulled the stay retroactively. This argument misstates both the law and the factual allegations in the complaint. The complaint alleges that Modern Floor Specialists, Inc. filed for Chapter 11 bankruptcy on August 5, 2025, and that Defendants had formal notice of the bankruptcy by August 7, 2025 [FAC ¶¶ 34, 83]. Despite this notice, Defendants served discovery, pursued motions to compel, demanded sanctions, and attended § 341(a) meetings after receiving bankruptcy notice [FAC ¶¶ 84–85]. These post-petition acts are alleged to be void ab initio in the Ninth Circuit and preempted under the Supremacy Clause [FAC ¶ 85].

The automatic stay under 11 U.S.C. § 362 operates as a federal injunction, immediately halting all actions against the debtor and its estate upon the filing of a bankruptcy petition. In *In re Gruntz*, 202 F.3d 1074, 1081–82 (9th Cir. 2000) (en banc), the Ninth Circuit held that the automatic stay is a matter of federal supremacy, and any contrary state actions taken in violation of the stay are void and subject to federal court enforcement. The court emphasized that federal courts have the exclusive authority to police violations of the stay and that state court actions taken in derogation of the stay are without effect. The complaint's allegations that Defendants continued their enforcement campaign after receiving bankruptcy notice, including serving discovery and demanding sanctions, must be accepted as true at this stage and are sufficient to state a plausible claim for violation of the automatic stay.

Defendants attempt to invoke the police power exception to the automatic stay, arguing that their conduct was undertaken for regulatory purposes. However, the police-power exception is narrowly construed, and actions primarily aimed at pecuniary extraction or monetary recovery fall outside its scope and remain subject to the stay. In *In re Dingley*, 852 F.3d 1143, 1146–48 (9th Cir. 2017), the Ninth Circuit clarified that the nature and purpose of the proceeding control whether the exception applies, and that actions with a pecuniary purpose are not protected by the police power exception. The complaint alleges that Defendants' conduct was not aimed at legitimate public protection, but rather at extracting monetary sanctions and advancing union interests, which places their actions squarely outside the police power exception and within the ambit of the automatic stay.

Moreover, the complaint alleges that Defendants' post-petition acts were undertaken for pecuniary purposes, not legitimate regulatory enforcement, and that these acts are void ab initio under controlling Ninth Circuit law. Whether the bankruptcy stay applied and whether Defendants' conduct

violated the stay are factual and legal questions that cannot be resolved on a motion to dismiss, especially where the complaint alleges that Defendants' actions were undertaken for pecuniary gain and not for public policy or regulatory enforcement. The court must accept these allegations as true for purposes of plausibility, and Defendants' attempts to dispute the nature and purpose of their conduct are improper at this stage.

### 7. Trade Secret Misappropriation and RICO Claims

Defendants argue that Plaintiffs have failed to adequately plead claims for trade secret misappropriation under the Defend Trade Secrets Act (DTSA) and the California Uniform Trade Secrets Act (CUTSA), as well as civil RICO and RICO conspiracy. This argument is contrary to both the factual detail in the complaint and the controlling legal standards governing pleading sufficiency.

The complaint alleges that Ortiz and Sonia Perez, aided and ratified by City officials, misappropriated proprietary vendor lists, supervisor sheets, and employee scheduling data belonging to Plaintiffs, and that Defendants facilitated this misappropriation by demanding the same data through abusive discovery, despite bankruptcy protections [FAC ¶¶ 92–94]. Plaintiffs further allege that the misappropriated information derives independent economic value from not being generally known and is subject to reasonable secrecy measures, including password protection and limited access [FAC ¶ 57]. The complaint also alleges that the scheme affected interstate commerce through use of U.S. mail and electronic communications routed through out-of-state servers [FAC ¶ 43].

The Ninth Circuit has made clear that a plaintiff need not spell out the secret in detail at the pleading stage; it is sufficient to identify the boundaries of the trade secret and plausibly allege misappropriation. In *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 658–60 (9th Cir. 2020), the court held that a plaintiff must describe the subject matter of the trade secret with

sufficient particularity to separate it from matters of general knowledge, but need not disclose the secret itself in the complaint. Plaintiffs have done so here by describing the nature of the vendor lists, supervisor sheets, and scheduling data, the secrecy measures employed, and the manner in which Defendants obtained and used the information. These allegations are sufficient to state a plausible claim under both DTSA and CUTSA.

With respect to the RICO claims, the complaint alleges a coordinated scheme involving mail fraud, wire fraud, and extortion under color of official right, with specific predicate acts including mailing discovery demands, sending meet-and-confer letters and sanctions demands by email, and filing motions to compel demanding sanctions payable to the City [FAC ¶¶ 42, 97–99, 100–103]. Plaintiffs allege that the enterprise consisted of Crowell, Dandekar, Sonia Perez, and Ortiz, acting with a common purpose of pecuniary extraction and union advancement, and that the scheme affected interstate commerce [FAC ¶¶ 43, 98]. The complaint provides detailed factual support regarding the participants, methods, and injuries, including repeated mailed and emailed acts and sanctions demands as a continuing pattern.

The Ninth Circuit recognizes that an association-in-fact enterprise can be inferred from purpose, relationships, and longevity. In *Odom v. Microsoft Corp.*, 486 F.3d 541, 548–52 (9th Cir. 2007) (en banc), the court held that an enterprise may be established by showing a group of individuals associated together for a common purpose of engaging in a course of conduct, and that the structure may be informal and need not have a hierarchical organization. Plaintiffs' allegations regarding the coordinated roles of City attorneys and union representatives, the repeated use of official processes for pecuniary extraction, and the ongoing nature of the scheme are sufficient to plead the existence of an enterprise.

11

Rule 9(b) requires that fraud predicates be pled with particularity, specifying the "who, what, when, where, and how," but context and plausibility matter. In *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995–97 (9th Cir. 2014), the court emphasized that the complaint must provide enough detail to give defendants notice of the conduct alleged, but need not prove the case at the pleading stage. Plaintiffs have identified the participants, the nature of the communications, the timing of the acts, and the injuries suffered, satisfying the requirements of Rule 9(b).

The pattern and injury requirements for RICO are also met. In *Grimmett v. Brown*, 75 F.3d 506, 510–12 (9th Cir. 1996), the Ninth Circuit held that related predicates over time showing continuity and injury to business or property are sufficient to establish a pattern. Plaintiffs' allegations of repeated mailed and emailed acts, sanctions demands, and misappropriation of business data over an extended period demonstrate both continuity and injury.

### 8. Municipal Liability and Policy Allegations

Defendants contend that Plaintiffs have failed to adequately plead municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), arguing that the complaint merely recites the elements in conclusory fashion. This argument is contrary to both the factual detail in the complaint and the controlling standards set forth by the Supreme Court and the Ninth Circuit. Under *Monell*, a municipality may be held liable under 42 U.S.C. § 1983 when the alleged constitutional violation results from an official policy, custom, or practice, or from the ratification of a subordinate's unconstitutional conduct by a final policymaker. The Ninth Circuit has clarified that, post-*Twombly* and *Iqbal*, a plaintiff must allege facts regarding the existence of a policy or custom; boilerplate recitations are insufficient, but specific examples and factual detail are adequate. See *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637–38 (9th Cir. 2012). The complaint here

alleges that the City of Los Angeles, acting through its City Attorney's Office, maintained a policy and custom of abusive discovery, pecuniary litigation misconduct, and obstruction of public records, as condemned in *City of Los Angeles v. PricewaterhouseCoopers, LLP* ("PwC") [FAC ¶¶ 88–90]. The persistence of this misconduct after *PwC* demonstrates deliberate indifference and ratification [FAC ¶ 89].

A custom or practice may be shown by repeated acts that are so permanent and well-settled as to constitute a standard operating procedure. See *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Plaintiffs have pled a detailed chronology of ongoing abusive litigation tactics, including repeated overbroad discovery, sanctions demands, and obstruction of access to public records, all ratified by senior City Attorney officials. These allegations are not isolated or conclusory; they are supported by specific factual examples, including the conduct of Deputy City Attorneys Crowell and Dandekar, the City's continued enforcement campaign after bankruptcy notice, and the ratification of these practices by supervisory officials [FAC ¶¶ 34–41, 88–90].

Ratification can establish municipal liability if a policymaker approves a subordinate's decision and the basis for it. See *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). The complaint alleges that senior City Attorney officials, including Hydee Feldstein Soto, ratified the abusive discovery and sanctions practices, and that these acts were undertaken as part of a broader policy and custom condemned in *PwC* [FAC ¶¶ 89–90]. The Ninth Circuit further requires that, where failure to train is alleged, the complaint must include facts showing deliberate indifference, not mere boilerplate. See *Dougherty v. City of Covina*, 654 F.3d 892, 900–01 (9th Cir. 2011). Plaintiffs have pled specific facts regarding the City's failure to train and supervise its attorneys in light of the *PwC* condemnation and the ongoing pattern of misconduct [FAC ¶¶ 88–90].

The complaint's detailed episodes and references to *PwC* condemnation, repeated acts of abusive litigation, and ratification by senior officials satisfy the requirements for pleading municipal liability under *Monell* and the Ninth Circuit's standards. Plaintiffs have alleged a policy, custom, and ratification of unconstitutional conduct, supported by specific factual detail and a coherent chronology. These allegations must be credited at the pleading stage, and Defendants' attempts to dispute facts or demand greater specificity are contrary to both the law and the record. Accordingly, the motion to dismiss should be denied as to all claims for municipal liability. Plaintiffs have more than satisfied the pleading requirements, and the complaint sets forth specific facts supporting each element of *Monell* liability, including policy, custom, ratification, and deliberate indifference, as required by controlling authority.

### 9. State Law Claims and Procedural Considerations

Defendants argue that Plaintiffs' state law claims are barred by California's anti-SLAPP statute, the litigation privilege, and Government Code immunities, and further contend that Plaintiffs have failed to comply with the Government Claims Act's presentation requirements. These arguments are premature and unsupported by the record at this stage, as the complaint alleges a pattern of conduct that falls outside the protections of these doctrines and raises factual issues not suitable for resolution on a motion to dismiss.

A.      **Anti-SLAPP Statute**

Defendants invoke California's anti-SLAPP statute, asserting that Plaintiffs' state law claims arise from protected petitioning activity. However, the anti-SLAPP statute does not shield conduct that is illegal, abusive, or undertaken for improper purposes. The Ninth Circuit has held that anti-SLAPP provisions apply in federal court, but defendants must first show that the challenged conduct

14

is protected activity; plaintiffs may then demonstrate a probability of prevailing, and illegal conduct is not protected. See *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972–73 (9th Cir. 1999); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834–35 (9th Cir. 2018). The complaint alleges that Defendants' conduct—including abusive discovery, sanctions threats, and misappropriation of trade secrets—was not undertaken in furtherance of legitimate petitioning, but rather constituted illegal and tortious acts for pecuniary gain and discrimination [FAC ¶¶ 1–4, 88–94, 104–110]. Where factual disputes predominate regarding the nature and purpose of the conduct, anti-SLAPP protection is unavailable at the pleading stage, and the merits must be resolved on a fuller record.

**B.       Litigation Privilege and Government Code Immunity**

Defendants assert that California's litigation privilege, codified at Civil Code § 47(b), and Government Code immunities bar Plaintiffs' state law claims. The litigation privilege is limited to communicative acts made in connection with judicial proceedings and does not extend to non-communicative conduct, abuse of process, or tortious acts outside the scope of legitimate litigation. The Ninth Circuit has recognized that the privilege applies to communications, not to non-communicative acts such as abuse of process or extortion. See *Graham-Sult v. Clainos*, 756 F.3d 724, 741–42 (9th Cir. 2014); *Flatley v. Mauro*, 39 Cal. 4th 299, 317–18 (2006). The complaint alleges that Defendants misused subpoenas, motions to compel, and § 341(a) attendance for intimidation and pecuniary leverage, acts that are not protected by the litigation privilege or government immunity where they fall outside the legitimate scope of judicial proceedings or are undertaken for improper purposes [FAC ¶¶ 105–106]. The boundaries of privilege and immunity are fact-bound and require a functional analysis of the conduct alleged, which cannot be resolved on a motion to dismiss.

**C.        Government Claims Act Presentation Requirement**

Defendants argue that Plaintiffs' state law claims fail for lack of compliance with California's Government Claims Act. The Ninth Circuit has made clear that state tort claims require allegations of compliance with the claim presentation requirement, but leave to amend is typically granted to cure any deficiency, and resolution of compliance is a factual issue. See *Karim–Panahi v. LAPD*, 839 F.2d 621, 627 (9th Cir. 1988). The complaint alleges ongoing and repeated violations by the City and its officials, and Plaintiffs reserve the right to name additional Doe Defendants as discovery reveals further participants [FAC ¶ 24]. Whether Plaintiffs have satisfied the claim presentation requirement is a factual issue not suitable for resolution on a motion to dismiss, particularly where the complaint alleges continuing violations and seeks injunctive and declaratory relief. Federal claims are unaffected by the Government Claims Act, and the action may proceed on those claims regardless. See *Mabee v. County of Orange*, 784 F. App'x 585, 588 (9th Cir. 2019).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs have more than satisfied the pleading requirements under Federal Rule of Civil Procedure 12(b)(6), presenting detailed and plausible allegations that must be accepted as true at this stage of the proceedings.

Defendants' motion to dismiss relies on improper factual disputes, premature immunity and privilege arguments, and legal theories that are either unsupported or require resolution on a fuller record. The complaint's detailed chronology, specific examples, and supporting authorities demonstrate plausible claims for relief under federal and state law, including First Amendment retaliation, Fourth and Fifth Amendment violations, Equal Protection and Due Process, Supremacy

16

Clause and Bankruptcy Code violations, trade secret misappropriation, civil RICO, Monell liability, and related state law claims. The procedural and substantive standards articulated by the Ninth Circuit and Supreme Court require that these claims proceed to discovery and further adjudication.

Accordingly, the Court should deny Defendants' Motion to Dismiss in its entirety. Plaintiffs respectfully request that the action proceed on all claims as pled, with the benefit of full factual development and the protections afforded by the governing legal standards.

Dated: November 7, 2025

Respectfully submitted,

*Joshua Matic*

Joshua Matic, Esq.
**MATIC LAW ASSOCIATES**
*Attorneys for Plaintiffs*

17